**Daniel L. MADDEN, Plaintiff-Appellant,**

v.

**Cornelius VAN DER LAAN,
Defendant-Appellee.**

**No. 83 C 0454.**

United States District Court,
N.D. Illinois, E.D.

July 19, 1983.

Phillip M. Migdal, Nelson Hembree, Chicago, Ill., for plaintiff-appellant.

Harry Teune, Worth, Ill., for defendant-appellee.

## MEMORANDUM AND ORDER

BUA, District Judge.

This is an appeal from a bankruptcy court judgment denying plaintiff's claim that a certain debt is not dischargeable under 11 U.S.C. § 523(a)(2)(A) and (B). For the reasons stated herein, the judgment of the bankruptcy court is affirmed.

This Court's jurisdiction to review the instant matter is predicated on Rules Bankr.Proc. Rule 801, 11 U.S.C. In addition, where a district court sits as a court of review for bankruptcy proceedings it is bound by the standard enunciated in Rules Bankr.Proc. Rule 810, 11 U.S.C.

> Upon an appeal the district court may affirm, modify or reverse a referee's judgment or order, or remand with instructions for further proceedings. The Court shall accept the referee's findings of fact unless they are *clearly erroneous,* and shall give due regard to the opportunity of the referee to judge of the credibility of the witnesses. (Emphasis added).

The facts of the case are as follows. In August of 1977, the plaintiff-appellant, Daniel L. Madden (Madden), and defendant-appellee, Cornelius Van Der Laan (Van Der Laan), together with Van Der Laan's son, William, formed a corporation called Metro Construction Co., Inc. (Metro). The purpose of the company was to construct single-family homes. Madden served as secretary-treasurer in charge of administrative operations, while Van Der Laan was vice president and the actual builder of the homes.

Because of Metro's limited money supply and desire to begin construction, it obtained loans from certain banks. The two loans in question are those from Continental Illinois Bank and First National Bank of Oak Lawn. In connection with these loans, Madden and Van Der Laan were required to execute notes and personal guaranties in their corporate and individual capacities, and to submit to the lenders, current financial statements in support of them.

Prior to tendering their personal financial statements to each particular bank, the parties met to determine whether they possessed enough individual collateral to induce the making of the loans. At these meetings, Van Der Laan represented to Madden that he was declaring "just enough to secure the loan," and that "he did not want to put down everything that he owned." Tr. 13. It is to be noted, however, that during the bankruptcy proceedings, Van Der Laan admitted that his statement of financial condition was incorrect and was "beefed up to insure that the corporation would secure the loans." Tr. 73–74.

Several months after the loans were made, certain events came about prompting Van Der Laan to "walk out on the projects." Tr. 16. Eventually, the notes were called for payment with concurrent demands made upon the corporation and individual guarantors. In light of both Van Der Laan's refusal to repay his share of the loans and Madden's personal guaranty, Madden was compelled to pay the balance in full, whereupon he brought the instant action to determine dischargeability. Madden sought to be reimbursed by defendant for his share of the payment made to the bank. Claiming fraud on the part of Van Der Laan in connection with obtaining the loans, Madden asserted that he was entitled to a finding that the money owed constituted a nondischargeable debt in bankruptcy. *See generally* 11 U.S.C. § 523.

The Bankruptcy Court found that Van Der Laan's alleged fraud was not the causal force behind Madden's decision to become co-guarantor of the notes. Thus, no reasonable reliance was present, and no finding of fraud could be made. 11 U.S.C. § 523(a)(2)(B)(iii). Crucial to the Court's holding was its determination that, because the parties were engaged in a joint business venture, Madden furnished the notes and guaranties primarily to protect his own business interests. In addition, the Bankruptcy Court concluded that the claim of fraud failed for a second reason, namely, that Van Der Laan did not intend to deceive Madden in connection with his decision to become co-guarantor. Intentional deception is required before a debt may be found nondischargeable in bankruptcy. 11 U.S.C. § 523(a)(2)(B)(iv).

On appeal, Madden asserts that the bankruptcy court erred in three respects. First, Madden contends that Van Der Laan's conduct, in connection with his purportedly accurate personal financial statements, constituted actual fraud and thus comes within the purview of §§ 523(a)(2)(A) and (B) which specifically pertain to debts that are excepted from dischargeability. Second, Madden alleges that he executed the notes and guaranties in reasonable reliance upon Van Der Laan's false financial statements. Finally, Madden claims that the bankruptcy court erred by virtue of its refusal to admit into evidence Van Der Laan's financial statement regarding a loan made by the First Savings and Loan of South Holland.

■ Madden's first claim is based on 11 U.S.C. § 523(a)(2)(A). Section 523(a)(2)(A) provides the following:

A discharge . . . of this title does not discharge an individual debtor from any debt for obtaining money . . . by false pretenses, a false representation, or actual fraud, *other than a statement respecting the debtor's or an insider's financial condition.* (Emphasis added.)

As can be seen from the clear wording of the statute, it is totally inapplicable to this case. Van Der Laan's alleged oral misrepresentations were made in the context of meetings which took place prior to obtaining the loans. The evidence is uncontradicted that the only discussions which took place at those meetings were in reference to Van Der Laan's financial condition. Thus, Madden's claim that this statutory section mandates a finding of nondischargeability is simply untenable. *Camden National Bank v. Archangeli,* 6 B.R. 50, 52 (D.Maine 1980).

■ Madden next contends that this Court is obliged to except the instant loans from dischargeability under 11 U.S.C. § 523(a)(2)(B). Madden's claim is based on alleged misrepresentations contained in his financial statements provided to the banks in connection with the loans. As has already been stated, those statements were reviewed by Madden prior to their submission to the bank. It is Madden's belief that, in light of these misrepresentations, the relevant statute requires that the debt in question be excepted from dischargeability. The Court disagrees.

Section 523(a)(2)(B) provides that

A discharge . . . of this title does not discharge an individual debtor from any debt for obtaining money . . . by . . . use of a statement in writing

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for obtaining such money...reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive.

Apparently, there is no dispute between the parties with respect to the first two requirements of 11 U.S.C. § 523(a)(2)(B), nor could there be. The written statements at issue were employed by Van Der Laan to ascertain the loans. Moreover, it is clear that the statements concerned both the "debtor's financial condition," and reflected a "materially false" amount, since the record indicates that Van Der Laan intentionally overstated his personal assets in excess of $110,000. Thus, this case turns on the two remaining elements of 11 U.S.C. § 523(a)(2)(B)—reasonable reliance and intent to deceive.

The Bankruptcy Court concluded that Madden possessed no reasonable right to rely on the written financial statements in connection with his execution of the personal guaranties. In support of this conclusion the Court found that Madden supplied the guaranties to protect his own business interests, and to promote the construction of the contemplated building projects. It was the Bankruptcy Court's conclusion that because the parties were engaged in a joint business venture, and the written financial statements were submitted to the lenders exclusively to enhance that venture's possibilities of securing the badly needed loans, Madden did not in fact "rely" on the written statements. This Court agrees. The plaintiff's goal, like the defendant's was to obtain the loans. Thus, the Bankruptcy Court apparently reasoned that it was this goal, rather than any statements by Van Der Laan, which induced Madden to sign his personal guaranty. Since the Court's analysis indicated that the alleged misstatements bore no causal link to Madden's ultimate actions, a finding of no reasonable reliance was compelled. This Court believes that this finding was fairly supported by the record, and that the plaintiff's claim was properly disposed of by the Bankruptcy. judge.

On appeal, Madden claims that the Bankruptcy Judge's finding was erroneous, and that a finding of reliance should have been made. Moreover, Madden asserts that his alleged reliance was "reasonable," for two reasons: 1) the assets were by their very nature "personal" thus giving him no reason to doubt their veracity, and 2) despite the absence of any indicia of unreliability, plaintiff nevertheless conducted his own inquiry into the financial statements' accuracy. Madden claims that because of these actions, Van Der Laan can neither argue that Madden did not rely, nor that his reliance was unreasonable.

Despite Madden's assertions to the contrary, the record in this case is replete with evidence to suggest that Madden did not rely on Van Der Laan's personal financial statements as an inducement to execute the personal guaranties. The record clearly indicates that the exclusive purpose of the meetings between the parties, prior to seeking the loans, was to determine whether their individual statements reflected enough collateral to impel the banks to certify the loan applications. There is no indication that the parties met to resolve the issue of whether either Madden or Van Der Laan possessed enough individual assets to personally repay his share of the loans in case of a corporate default. Rather, it is evident from the record, and wholly consistent with the Bankruptcy Court's factual determinations, that Madden executed the personal guaranties ultimately "to protect his business interests," rather than in reliance on Van Der Laan's personal financial statements. In the absence of the requisite reliance, Madden's claim must fail. 11 U.S.C. § 523(a)(2)(B)(iii).

For reasons virtually identical to those which supported the Bankruptcy Court's finding of no reliance, the Bankruptcy judge's finding that there exists no proof of intent to deceive also must be upheld. The deception, if any existed, was not directed at the plaintiff, but rather at the bank. The plaintiff, however, asks this Court to find nondischargeable the debt owed to *him,* not to the bank. Since the record supports a finding that the plaintiff was,

not the object of the intentional deception, if any in fact existed, the requirement of 11 U.S.C. § 523(a)(2)(B)(iv) was not met, thus providing a second ground for denial of plaintiff's claim for relief.

Since Madden is unable sufficiently to prove the elements required under 11 U.S.C. § 523(a)(2)(B), this Court need not address the Bankruptcy Court's refusal to admit into evidence the statement regarding the First Savings and Loan of South Holland.

For all the foregoing reasons, the judgment of the Bankruptcy Court denying plaintiff's claim for relief from dischargeability pursuant to 11 U.S.C. § 523(a)(2)(A) and (B) is affirmed.

IT IS SO ORDERED.